**FOX–SMYTHE TRANSPORTATION COMPANY and Gulf Insurance Company, Petitioners,**

v.

**Ross D. McCARTNEY and State Industrial Court, Respondents.**

**No. 45759.**

Supreme Court of Oklahoma.

May 22, 1973.

H. A. Bud Carter, Oklahoma City, for petitioners.

Dick Bell and Frank Seay, by Frank Seay, Seminole, for respondent, Ross D. McCartney.

LAVENDER, Justice:

The matter herein reviewed arises from an earlier proceeding between these parties involving compensable injury received by respondent, hereafter claimant, on September 2, 1969. Fox-Smythe Transportation Company v. McCartney, No. 44,412 (not reported officially) 42 OBJ 1107.

Claimant received injury during employment which aggravated pre-existing malignancy and resulted in pathological fracture of the left femoral head. In the proceeding for review of that order awarding compensation for temporary total disability, this court held medical evidence that accidental injury might have caused fracture of the femur, sufficient to establish causal connection between the injury sustained and resulting disability.

The original finding of fact in this respect provided basis for an order (June 16, 1970) awarding claimant additional temporary total disability not exceeding 300 weeks, and further medical treatment. Factual matters involving injury and ensuing medical history were reviewed at length in the decided case, supra. This court will take notice of judgments, de-

crees, records and proceedings formerly pending, and particularly will notice former proceedings to which reference is made in a pending cause. Chisholm v. Stephenson et al. (1961), Okl., 363 P.2d 229.

In February, 1972 claimant sought hearing for adjudication of permanent total disability, continuation of medical treatment, and commutation to lump sum payment of any order for permanent disability. Upon hearing (February 7, 1972) the evidence showed claimant had received temporary compensation until February 3, 1972, had been treated continuously by Dr. B. since injury, still suffered pain, was on crutches and not permitted to place any weight on the left hip, and desired further medical treatment. Claimant also offered in evidence deposition testimony of Dr. S. introduced at the original hearing, and testimony of Dr. M. mentioned hereafter.

Claimant also testified reasons for asking commutation of any award was to pay outstanding debts and have funds to repair and remodel the family home. Claimant had no income source except compensation, social security payments, and wife's wages from part-time employment. Respondent's extended cross-examination, concerning reasons for seeking commutation, showed claimant was not in arrears with obligations, including mortgage on home, but had no source of income other than those mentioned.

Dr. M. examined claimant January 26, 1972, after obtaining extensive past history. Examination disclosed involvement of liver, with atrophy of muscle and tenderness in left hip and evidence of prior surgery. X-ray examination showed extreme bone destruction at hip level with non-union fractures of entire head of left femur, diagnosed as fractured left hip superimposed upon carcinoma which had involved both hips and the pelvis. Disability was due to fracture and destruction of bone in left hip. Claimant never would be able to perform ordinary manual labor and would continue in need of medical treatment, including narcotics for pain during remainder of his life.

Respondent introduced the deposition of a pathologist (Dr. W.T.S.) whose testimony was based upon study of medical reports and depositions given by Drs. B., L., and S. in the earlier case. This witness responded to questions predicated upon facts surrounding claimant's injury and ensuing physical disability. The physician's opinion was claimant suffered carcinoma of the kidney which metastasized into the bone. The injury might have caused the fracture earlier than this otherwise would have occurred but, even if true, course of the carcinoma had nothing to do with the injury and existing disability resulted from cancer. Need for further medical treatment would not result from injury but from permanent disability caused by cancer. This physician's testimony did not controvert evidence from claimant's doctors that without injury, which induced pathological fracture causing total disability, claimant might have lived years without suffering any fracture.

A supplemental report of Dr. B. was introduced by respondent, stating claimant's pathological fracture resulted from cancer which metastasized to the femur, and was unrelated to an injury. This doctor originally testified claimant's injury might have caused fracture to occur sooner than otherwise expected. When examined by Dr. B. on February 12, 1970, claimant was found unable to work, still in need of medical treatment, and unlikely ever to be able to perform manual labor. Evidence of Dr. L. also recognized, as within realm of possibility, that claimant's injury caused occurrence of pathological fracture earlier than otherwise expected.

The trial judge's order awarded permanent total disability and continuing medical treatment. En banc appeal resulted in affirmance, except for modification not of present concern. This proceeding for review is directed to propriety of the order for permanent total disability and continuing medical treatment.

Two contentions advanced urge trial court error in ordering an award for permanent total disability. The first asserts error by claiming the only competent medical evidence showed claimant's need for temporary compensation and medical care had ceased without resulting permanent disability. The second insists error inhered in awarding permanent disability for accidental injury upon the basis injury only aggravated a pre-existing condition. Both involve weight and credibility of medical testimony, since each is premised upon the assertion no iota of competent medical evidence indicates causal relationship between the injury and claimant's present disability.

Respondents admit existence and extent of claimant's disability, but contend the issue involves a distinction between injury and award for temporary disability, and an award for disability resulting from a pre-existing condition. Upon basis of medical evidence which assertedly shows lack of relationship between accidental injury, pre-existing carcinoma, and ensuing pathological fracture, respondents conclude the lack of competent evidence to indicate causal effect between injury and disability requires vacation of this award as a matter of law.

█ In the prior case medical evidence specifically was held sufficient to support finding causal connection between accidental injury and disability adjudicated in that proceeding. That determination destroys the premise relied on here, and effectively forecloses present argument concerning failure of competent medical evidence to establish causal relationship between disability and injury.

██ Respondents insist claimant's malignancy never had been found to be work-connected, thus aggravation and acceleration from trauma involved was only a temporary factor affecting growth. Further, in light of medical knowledge, it was physiologically unreasonable for the trial court to project this injury as the connective link to a pre-existing malignancy and

attribute claimant's condition to the injury. Thus, because the injury was only temporary and, after lapse of time, effects of trauma on growth rate of the malignancy subsided, injury was neither of consequence nor bore any relationship to claimant's present or future condition.

This argument admittedly is drawn from a defense publication by an unidentified author. Apparently this is tendered in an effort to establish that any award to claimant should be apportioned between temporary disability from injury which ceased, and permanent total disability which claimant now suffers.

Absent special statute, the general rule is that an apportionable disability does not include non-disabling defects or disease which contributes to the ultimate result. 1 Larson's Workmen's Compensation Law § 12.20; 2 Larson's Workmen's Compensation Law, § 59.20 and footnote cases (involving a variety of pre-existing diseases), including Strasser v. Jones (1960), 186 Kan. 507, 350 P.2d 779, and Marsiglis' Estate v. Granite City Auto Sales, Inc., 124 Vt. 95, 197 A.2d 799. This rule is a rule of reason, premised upon the proposition that an employer takes an employee as he finds him. In Marlar v. Marlar (1960), Okl., 353 P.2d 17, we stated:

"The Workmen's Compensation Law, 85 O.S.1951 § 1 et seq., does not undertake to apportion the degree or extent by which claimant's illness is augmented or hastened by the injury superimposed upon it. Rather, where it is shown that a latent or dormant disease, unknown to the workman, is aggravated, accelerated or brought to life by an accidental injury, the entire disability arising from the cumulative effect of injury and illness, interacting upon each other and operating together, furnishes the proper basis for compensation."

Also see Wade Lahar Construction Company v. Howell (1962), Okl., 376 P.2d 221, and cases cited. The rule has been applied consistently since Superior Smokeless Coal

and Mining Co. (1931), 148 Okl. 193, 298 P. 247.

Respondents also contend commutation of a portion of the award to a lump sum was unsupported by competent evidence and constituted an abuse of discretion, because made in contemplation of death.

Three arguments are advanced in support of this contention. Respondents first claim the order of commutation was an arbitrary exercise of judicial discretion because the record is devoid of competent evidence to support showing of necessity. Claimant's evidence relating to request for commutation has been noted, including the fact claimant was not in arrears on his financial obligations. However, the evidence showed the total monthly income was insufficient to defray living expenses and at the same time pay current obligations and allow contemplated home repairs. We are cited to no case which announces that arrearages of indebtedness are a primary requisite for lump sum commutation of all or part of a final compensation award.

Respondents acknowledge the statute, 85 O.S.1971 § 41, provides for commutation of an award for extreme hardship or good cause shown, which may be done either upon application or the court's own motion. Respondent insists there was no subsequent application by claimant, and " * * * there was no motion made by the court to commute the award * * *." The issue of commutation was tendered by claimant when the cause opened for hearing. Evidence was introduced and respondent's counsel cross-examined claimant in relation to evidentiary matters tendered to support the request. What further application claimant should have made, or what motion the court was required to make is not made clear.

The basic argument respondents seek to advance is that commutation of an award is improper where the record affirmatively shows the order is made in view of claimant's impending death, and does not promote substantial justice to all parties. This position is derived from testimony of respondent's doctor that claimant was dying from cancer of the kidney, measured against language in Kerr's, Inc. v. Smith (1961), Okl., 359 P.2d 330.

In Smith we held commutation of an award to lump sum in view of impending death from a cause for which compensation was awarded constituted an abuse of discretion as not tending to promote substantial justice to all parties. The result was reached in view of uncontroverted evidence showing claimant would not live out the time encompassed within the order awarding permanent partial disability. In the present case the evidence was only that claimant was dying of an incurable malady, without prediction or speculation concerning the length of time he might survive. That all must die is a certainty, but without specific declaration as to probable time this certainty cannot be equated as impending. Partial commutation of the award under circumstances shown was not an abuse of discretion.

The final contention urges the order requiring respondents to furnish continuing medical treatment and care so long as required constituted an abuse of discretion for three reasons: 1) unenforceable because of uncertainty of terms; 2) court exceeded authority by failing to specify treatment and care should be limited to that necessary as a result of accident; 3) term and purpose for which treatment was awarded are so indefinite and uncertain as to preclude interpretation.

Respondents acknowledge import of decisions in Orrick Stone Company v. Jeffries (1971), Okl., 488 P.2d 1243, and Depue v. Barsh Truck Lines (1972), Okl., 493 P.2d 80. However, respondents assert reasonable interpretation of these decisions, and 85 O.S.1971, § 14, does not preclude a conclusion that an order for medical treatment is not intended to destroy the 500 week statutory limitation on compensation set by legislative action.

In Depue, supra, we reiterated the principle first stated in the Jeffries case. Sections 14 and 22(1) of the Act were held not to be combinable so as to make either a 300 week or 500 week limitation applicable to limit the period during which payments for medical care and treatment must be made. The injured party is entitled to benefits of both sections. The order for continuing medical care and treatment was proper. Conclusions stated obviate need for discussion of other arguments under this contention.

Award sustained.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, HODGES, SIMMS, and DOOLIN, JJ., concur.

BARNES, J., dissents.